### KERWIN v. MEAD et al.    (No. 1202.)

(Court of Civil Appeals of Texas. El Paso. March 24, 1921. Rehearing Denied April 14, 1921.)

**1. Appeal and error ⊗═837(8)—Testimony adduced on motion for new trial cannot be considered in testing judgment.**

Testimony from the evidence adduced on motion for new trial and not from the certified statement of facts on appeal cannot properly be considered by the Court of Civil Appeals in testing the accuracy of the judgment entered.

**2. Appeal and error ⊗═1010(1)—Courts cannot set aside judgments supported by affirmative evidence.**

Appellate courts are not authorized to set aside judgments supported by affirmative evidence as shown by the statement of facts.

**3. New trial ⊗═85—Defendant who failed to appear after postponement of trial cannot complain.**

Where trial before the court progressed to a certain point, whereupon the court announced that the trial would be resumed on a day following, at which time the final testimony was taken and judgment rendered, but defendant was not then in court, he cannot be granted a new trial on ground that judgment was not rendered at a regular trial, but on the unverified report of an auditor without opportunity to defendant to object.

**4. Appeal and error ⊗═978(1), 1044—Irregularity in asking county auditor to inspect books of partnership in suit involving dissolution not ground for reversal.**

In suit involving a dissolution of partnership, where no auditor was appointed such as is contemplated by statute, but the court simply asked the county auditor to inspect the books and report whether plaintiff partners had been charged with a certain $12,000 in controversy and defendant partner given the proper credit therefor, such irregularity does not necessitate reversal, there being ample evidence to support the court's judgment; the fact that some auditor after trial audited the books and reached a

different conclusion is not ground for reversal on an assignment the court erred in refusing new trial.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by Roy Mead and another against W. J. Kerwin. From judgment for plaintiffs, defendant appeals. Affirmed.

Scott, Brelsford & Smith, of Eastland, and Smith, Robertson & Robertson, of Dallas, for appellant.

J. M. Nealon, of El Paso, Frank Judkins, of Eastland, and J. E. Ingram, of Ranger, for appellees.

### Statement of the Case.

HARPER, C. J. This suit grew out of a dissolution of a copartnership between Homer and Roy Mead, appellees, and W. J. Kerwin, appellant, entered into February 1, 1918. The writing of that date recites that Kerwin was to have a three-fourths interest and each of the Meads a one-eighth interest. On March 1, 1919, by a writing they declare the then status of the partnership to be; Homer and Roy Mead had paid, as per the first partnership agreement, the full value of a one-eighth interest each in the tools and are now the owners thereof. The next writing between the parties recites the former agreements and further recites that Kerwin has purchased and brought into the business additional tools valued at $24,000; that the business had been profitable and the parties wishing to enter into a new agreement (the writing then recites):

"This agreement witnesseth that the parties hereto have entered into a new agreement as follows:

"That, except as hereinafter provided for, the division of wells still drilling, W. J. Kerwin shall have an undivided one-half interest in the profits and assets of said business, and Homer Mead and Roy Mead each shall have an undivided one-quarter interest in said business from the date of this agreement, except that in all wells completed to this date said Meads shall have a one-eighth interest, including the Barnes No. 1 and the Copeland No. 12, both now nearing completion; and in all wells hereafter completed, including the Roper No. 2 and the Terrell No. 12 and the Patterson No. 3, now drilling, said Kerwin shall have an undivided one-half interest and the Meads one-fourth each in the profits thereof.

"That Homer Mead and Roy Mead shall each pay to W. J. Kerwin personally six thousand dollars (a total of $12,000) for an eighth interest each in the additional tools and assets brought into the business by Kerwin from the date of the original agreement until May 31, 1919, to date as shown by the books of accounts kept by Jones & King * * * and the bills for assets from May 31, 1919, to date to be paid for by the copartnership." Signed and dated June 3, 1919.

On August 23, 1919, the partnership was dissolved by agreement in writing which recites (applicable to this appeal) that the Meads, for a consideration of $40,000 paid, the receipt of which is acknowledged, sell to Kerwin all their right, title, and interest in all the physical properties belonging to the copartnership; that Kerwin should take full control of the business, collect outstanding accounts due, and pay to each of the Meads one-quarter of such moneys as may be collected after the debts had been paid, reserving a lien to secure the payment of any sums not promptly paid over by Kerwin.

Upon the execution of this agreement Kerwin paid to the Meads $28,000 of the $40,000. The balance was withheld to await a determination of the status of the accounts between the parties.

October 4, 1919, this suit was filed by the Meads to recover the $12,000 balance of agreed price of the physical properties above noted and for individual profits, all alleged to be due and unpaid under the above contracts, etc.

Defendant pleaded general demurrer, general denial, and specially that all moneys due under the partnership agreements had been paid.

The cause was tried by the court without a jury, and judgment rendered for plaintiffs, to Roy Mead $5,707.15, and to Homer Mead $8,420.36, and foreclosure of lien, from which Kerwin appeals.

#### Opinion.

The eighth and ninth assignments charge that the judgment of the court is excessive and contrary to the law and evidence in this:

"The written stipulation under which the partnership of W. J. Kerwin Drilling Company was dissolved and terminated provided that defendant should pay the plaintiffs the sum of forty thousand dollars ($40,000.00) for plaintiffs' interest in the physical properties and good will of the business of said partnership, and it was expressly ascertained and agreed by and between the parties at the time of such dissolution that plaintiffs were at such time indebted to the firm in the sum of twelve thousand dollars ($12,000.00), and that such sum should be deducted from the agreed value of their interest in said business, $40,000.00, and in pursuance of such agreement the defendant paid plaintiffs the balance, amounting to $28,-000.00, which was in full settlement and satisfaction of the defendant's obligation to plaintiffs under said contract of dissolution."

[1] These assignments are submitted as propositions and are not followed by any statement, but we are referred for statement to the statement under first proposition under third assignment. That state-ment is taken from the evidence adduced upon motion for new trial, and not from the certified statement of facts, so it is apparent that this testimony could not properly be considered by us in testing the accuracy of the judgment entered.

[2] The statement of facts show that the judgment of the court is supported by affirmative evidence. In such cases appellate courts are not authorized to set aside judgments by reversals.

[3] The first to seventh assignments, inclusive, urge that the trial court should have granted a new trial: First, because the judgment was not rendered by the court upon a regular trial, but upon the unverified report of the county auditor without giving defendant an opportunity to object thereto. (a) That it was made without time to properly audit the books and under a misconception of what the court expected the auditor to do. (b) That a proper and complete audit, after the trial, shows that plaintiffs owed defendant. (c) That plaintiff had not had the books, but that they had been wrongfully withheld from him; that upon securing the books an accurate audit was made which showed plaintiffs, to owe defendant. If the uncontroverted evidence supported these propositions as asserted by appellant, he should be given a new trial, but to the contrary, there is evidence that, the trial being before the court, after it had progressed to a certain point, he announced that the trial of the case would be resumed on the Monday following, at which time the final testimony was taken and judgment rendered. If the defendant was not there to look after his interests, he alone was to blame.

[4] The evidence further shows clearly that no auditor was appointed such as is contemplated by the statute, but that the court simply asked the county auditor to inspect the books and report whether the plaintiffs had been charged up with the $12,000 in controversy and defendant given the proper credit therefor. It may be conceded that this was irregular, but not such irregularity as should reverse the case, because there is ample evidence in this record to support the judgment of the court, and the fact that some auditor or auditors, after the trial, audited the books and arrived at a different conclusion is not ground for a reversal upon an assignment that the court erred in refusing a new trial. There is no such showing in this case that the court abused its discretion in overruling the motion for new trial as to cause a reversal, especially in view of the fact that it clearly appears that a proper judgment has been rendered under the law and facts.

Affirmed.